J-A31002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JENNIFER HERNANDEZ-LERCH AND KRISTOFER LERCH, HER HUSBAND | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| LERRYN L. GRAY, ET AL. | |
| Appellee | No. 842 MDA 2015 |

Appeal from the Judgment Entered May 6, 2015
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2013-CV-5560-CV

BEFORE:  PANELLA, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 17, 2016**

Jennifer Hernandez-Lerch appeals from the judgment entered after a jury awarded her medical expenses and lost wages in excess of $17,000.00 as a result of injuries sustained in a motor vehicle accident, but did not award her damages for pain and suffering.  Because the jury's award of zero damages for non-economic loss is against the weight of the evidence, we reverse and remand for a new trial limited to damages.

Hernandez-Lerch suffered soft tissue injuries when the vehicle in which she was a passenger was struck from behind in a chain-reaction collision caused by Defendant/Appellee Lerryn L. Gray's negligence.  After a two-day trial, the trial court entered a directed verdict against Gray on the issue of

_____

[*] Retired Senior Judge assigned to the Superior Court.

negligence. The jury awarded Hernandez-Lerch $16,233.40 for medical bills and $900.00 for wage loss and zero damages for pain and suffering. Hernandez-Lerch filed a post-trial motion seeking a new trial on damages, claiming the jury improperly failed to award damages for pain and suffering. The trial court denied the motion and judgment was entered on May 6, 2015. Hernandez-Lerch filed this timely appeal. She raises one issue for our review:

> Did the trial court err in failing to award appellant a new trial where the jury did not award appellant non-economic damages even though the jury determined that the appellant sustained harm in the motor vehicle collision and awarded her $17,133.40 in economic damages?

Determining the adequacy of a verdict is a matter for the sound discretion of the trial judge, and we will not reverse absent a clear abuse of discretion. *Hawley v. Donahoo*, 611 A.2d 311 (Pa. Super. 1992). A new trial should be granted when "the jury's verdict is so contrary to the evidence that it `shocks one's sense of justice.'" *Burnhauser v. Bumberger*, 745 A.2d 1256, 1260-61 (Pa. Super. 2000) (citations omitted). A jury award should be set aside as inadequate "when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." *Womack v. Crowley*, 877 A.2d 1279, 1283 (Pa Super. 2005) (citations omitted).

The jury found Defendant Gray was negligent, that Gray's negligence was a factual cause of harm to Plaintiff Hernandez-Lerch, and that

- 2 -

Hernandez-Lerch sustained economic loss (medical expenses and wage loss) in excess of $17,000.00. **See** Verdict Sheet, 8/19/14, at 1-2. The evidence was uncontested that Gray's negligence caused Hernandez-Lerch's injuries (lumbosacral sprain and strain, cervical sprain), that Hernandez-Lerch was treated with an epidural steroid to both her neck and her lower back, that Hernandez-Lerch underwent physical therapy, and required the use of a TENS unit and a home traction unit. Accordingly, the jury's award of zero damages for pain and suffering is not reasonably related to the evidence presented at trial. The verdict is, therefore, against the weight of the evidence.

The general rule is that victims must be compensated for all their losses caused by the negligence of another. **Boggavarpu v. Ponist**, 542 A.2d 516 (Pa. 1988). However, not every injury results in compensable pain. In **Boggavarpu,** plaintiff was bitten by his neighbor's dog. Plaintiff claimed that the tetanus shot administered in the hospital subsequent to this bite pierced his sciatic nerve. It was uncontested that plaintiff was bitten; however, the extent of the injury to the sciatic nerve was disputed. The jury awarded plaintiff damages solely for the cost of hospital care, thereby excluding damages for loss of consortium and pain and suffering resulting from the pierced sciatic nerve. The trial court determined that the injury dictated the award of some compensation, and ordered a new trial. Our Supreme Court reversed, holding that not all pain is compensable. The **Boggavarpu** court stated:

> [T]here are injuries to which human experience teaches there is accompanying pain. **Todd v. Bercini**, 371 Pa. 605, 92 A.2d 538 (1952). Those injuries are obvious in the most ordinary sense: the broken bone, the stretched muscle, twist of the skeletal system, injury to a nerve, organ or their function, and all the consequences of any injury traceable by medical science and common experience as sources of pain and suffering. **Thompson v. Iannuzzi,** 403 Pa. 329, 169 A.2d 777 (1961); **Yacabonis v. Gilvickas**, 376 Pa. 247, 101 A.2d 690 (1954); **Todd, supra**.

*Id*. at 518 (emphasis added). However, a jury is not required to believe "that every injury causes pain or the alleged pain." **Id**. Furthermore, a jury is free to believe that certain injuries are a "transient rub of life and living, a momentary stab of fear and pain, or neither." **Id**.

In **Brodhead v. Brentwood Ornamental Iron Inc.**, 255 A.2d 120 (Pa. 1969), plaintiff established negligent conduct on the part of the defendant; however, the defendant contested the extent of the injuries suffered. The Court found that even though there was no direct evidence contradicting plaintiff's testimony and his treating physicians' testimony as to the existence of contusions, it was within the jury's province to pass on credibility, and to find that the injury, in fact, did not exist. After review of the record, the Court determined that because the only evidence of the contusions was from the plaintiff and the doctor who treated him, and the doctor was unable to substantiate his statements concerning his initial examination and treatment of plaintiff on the day following the accident by any records made at that time, such disbelief by the jury was not wholly unwarranted. **Id**. at 122.

In this case, however, and as fully set forth below, our review of the record does not warrant such disbelief. The evidence of injury to Hernandez-Lerch's cervical and lumbosacral spine was uncontested, and the physician's and physician assistant's testimony and records substantiated Hernandez-Lerch's injuries.

Hernandez-Lerch was a front-seat passenger in a 2012 Toyota Corolla, driven by Iris Rivera Merced, on February 12, 2013, on Interstate 83 in York County. Merced's car was hit from behind by a 2010 Ford F-150 truck operated by Defendant Earl R. Oberholtzer. Oberholtzer's truck was hit from behind by the vehicle operated by Defendant Gray, which Oberholtzer described as traveling at high speed. The Toyota in which Hernandez-Lerch was a passenger was then pushed into a Fed Ex truck that had been stopped ahead.

Hernandez-Lerch and Merced were both removed from the Toyota by ambulance personnel and taken to Harrisburg Hospital. Emergency room personnel performed an x-ray of Hernandez-Lerch's lumbar and cervical spine and gave her narcotic pain medication. The next day, Hernandez-Lerch was examined by Thomas Ladley, P.A. Ladley testified that the cervical spine x-ray showed possible muscle spasms altering the actual alignment of the cervical spine, common in neck injuries. Videotaped Deposition, Thomas Ladley, P.A., 7/30/14, at 9. Ladley testified that the working diagnosis was cervical neck strain and lumbosacral strain, defining muscle strain as meaning "the muscles, the soft tissues have been pushed a

little bit further than they should, either chronically or acutely as in the case of the motor vehicle accident." *Id*. at 12. He recommended conservative treatment, which included physical therapy, continued pain medication, work restrictions and follow-up care. Ladley saw Hernandez-Lerch one week later, at which time Hernandez-Lerch stated that she was 75% improved, but complained of headaches. *Id*. at 14. Ladley prescribed anti-inflammatories for her headaches and refilled her pain medication. *Id*. at 15.

Hernandez-Lerch returned to see Ladley on March 5, and at this visit, she stated continued improvement, some headaches and neck stiffness. *Id*. at 16. On March 19, Hernandez-Lerch again saw Ladley, and reported a "set back." *Id*. at 17. Ladley ordered an MRI of her cervical spine and referred her to an orthopedic surgeon. *Id*. at 18. He also testified that in his opinion, within a reasonable degree of professional certainty as a certified physician assistant, Hernandez-Lerch's neck pain, low back pain, and headaches resulted from the motor vehicle accident. ***Id.*** at 19.

Raymond Dahl, D.O., examined Hernandez-Lerch on April 4, 2013, and diagnosed her with cervical sprain/strain and cervical sprain/strain. Videotaped Deposition of Raymond Dahl, D.O., 7/23/14, at 5-8. Dr. Dahl testified as follows:

> Q: Could you tell us where the examination was and the results?
> A: [Hernandez-Lerch] had a lot of tenderness involving her cervicolumbar spine. She had pain with range of motion of her cervical and lumbar spine. . . . She had had an MRI of her neck which showed that she had some disc bulging and tightness around the existing nerve root at C-5, C-6 on the right. She also had that at C-3,4, as well as C-4,5. . . . [S]he had what we call degenerative disc

disease.  It's some slight collapsing of the disc space.  And when you collapse something in this direction, it will bulge in this direction.  And so on the model, in her mid-cervical spine, there was some bulging of the discs into the canal.

* * *

Q: Now, were these issues that existed before the motor vehicle accident of February 2012?

A: In regard to her neck, I do not believe so.

Q: Okay.  What about other diagnostic tests?

A: She had an x-ray, a plain film that was done at Harrisburg Hospital I believe right after her accident, and that showed that she had some straightening of her normal cervical lordosis which is typically indicative of muscle spasm. . . . The normal neck is in a C, has a C-shape[].  And hers rather than having the C, the neck was straight.

Q: Okay. And what is a spasm in that regard?

A: That's when you will have a neck injury.  The muscles around the cervical spine or the neck can become very tight. . . . And that makes the C become straight.

Q: Well, Doctor, given the history, your physical exam, your review of the diagnostic tests, did you formulate a diagnosis?

A: The diagnosis was a cervical sprain, strain and a lumbosacral sprain, strain. . . .  Basically she had injured her neck and low back, but I did not feel that there would be anything that would  be surgical. . . .  At that point I recommended she try an epidural steroid injection into her neck.

Q: Why?  What is that designed to do?

A: What we do is I have a pain management physician inject the epidural space which actually goes into the canal.  And the epidural steroid injection, the intent is, it's the most potent anti-inflammatory medicine we could give one and it really helps with inflammation and pain.

Q: All right.  Did she do that?

A: Yes. . . . I sent her to Susquehanna Pain Management to Dr. Haueisen. Then Dr. Haueisen performed the trans-foraminal epidural steroid injection. . . . It's just an injection into the neck. . . . I saw her [again] on 5-17-2013. . . . She reported that with the epidural steroid injection that she had in her neck, she actually was markedly improved and the headaches she was having were much better. . . .

Q: Okay. Was she still using any medication?

A: Motrin.

Q: All right. How about the back, had that-- what is the story there?

A: She was continuing to have intractable low back pain.

Q: What do you mean intractable?

A: Where it is just unremitting. It's there all of the time.

Q: Did you examine her that day?A: I did. . . . Basically it was pain with bending in extension of her lumbar spine, and also she had a lot of tenderness involving her lumbar spine, the low back. . . . At that point, I felt that since she had done quite well with the epidural steroid injection in the neck, I thought that we should consider an epidural steroid injection in her lumbar spine.

Q: Did she do that?

A: Yes. . . . That was on June 26, 2013.

Q: And again, could you tell us when she came in to see you the end of June 2013, what was the history?

A: At that point she was doing quite well. She had had the epidural steroid injection in both her neck and low back. . . . Her headaches were markedly improved. She had no problems in her arms or her legs. And at that point, I felt that there was really no further treatment that . . . she would need from me. . . . I recommended that she continue the exercises that she had learned in physical therapy, and then she could also use something called H-wave which is a TENS unit, and also home traction, the home traction device.

*Id*. at 7-13.

At the conclusion of direct examination testimony, Dr. Dahl opined that within a reasonable degree of medical certainty, Hernandez-Lerch's "headaches, the neck injury and low back injury were a direct result of the accident on February 12, 2013." *Id*. at 13. On cross-examination, Dr. Dahl acknowledged that Hernandez-Lerch had been seen prior to this accident by Dr. Demuth, another doctor in his practice, for low back pain. *Id*. at 16.

Hernandez-Lerch also testified. She explained that she had suffered from low back pain prior to the February 12, 2013 accident, having injured her lower back in an automobile accident in December 1997. She suffered a herniated bulging disc, and was treated at the Orthopedic Institute of Pennsylvania. N.T. Trial, 8/18/14, at 161-62.

With respect to the February 12, 2013 accident, Hernandez-Lerch testified that she did in fact tell the ambulance personnel that she had suffered a previous back injury and that she asked for Prednisone right away. She stated that she knew "this was going to exacerbate the situation. I needed medication for that." *Id*. at 178. She also testified that she had two injections in her neck and one in her back, and that after the injections she did feel better and was able to walk on a treadmill and continue her Zumba classes, but with low impact modification. *Id*. at 183-84. She explained, however, that the injections did not afford lasting relief, that the home traction unit helped with headaches, and that she used the TENS unit "frequently," and as recently as two days prior to trial. *Id*. at 186-91.

Additionally, Hernandez-Lerch stated that prior to the February accident she had a low back issue in August, stating, "I do have permission to call the doctor to get Prednisone. It's the only thing that relieves it. I was in remission at the time of the accident, meaning from August 15th to February 12th I had no incident of back pain." *Id*. at 192. She also stated at trial that she continued to get headaches about "twice a month," that she continued to have low back pain, and that her "good days do not outnumber [her] bad days." *Id*. at 197.

The decision in *Burnhauser* compels reversal in this case. In *Burnhauser* the jury awarded an automobile accident victim no damages for pain and suffering, limiting damages to the victim's unreimbursed medical expenses. This Court held that since opposing experts both agreed that the victim had suffered soft tissue injuries, which would require up to six months to resolve, the verdict was against the weight of the evidence. *Burnhauser*, 745 A.2d at 1261. We stated: "The jury should not have limited the damage award to her unreimbursed medical expenses. Clearly, these injuries are of the types that normally involve pain and suffering." *Id*.

Here, as in *Burnhauser,* the evidence was undisputed that as a result of the February 12, 2013 collision, Hernandez-Lerch suffered cervical and lumbar sprain and strain, that she suffered neck and low pain from these injuries, as well as aggravation of her prior low back injury, and that these injuries took at least four months to resolve. Defendant Gray did not present expert testimony. As our Supreme Court stated in *Thompson v.*

- 10 -

*Iannuzzi*, 169 A.2d 777 (Pa. 1961): "It is true that the jury is the final arbiter of facts but it may not, in law, ignore what is patent to the eye, obvious to the mind and clear to the normal process of ordinary computation." *Id*. at 778-79.

The fact that Hernandez-Lerch suffered pain from a previous accident, sixteen years prior, does not negate the undisputed evidence that her injuries were caused by the February 12, 2013 accident, and that those type of injuries cause pain. The jury's award, therefore, bears no reasonable relation to the injuries suffered by Hernandez-Lerch. *Burnhauser*, 745 A.2d at 1261. **See also *Hobbs v. Ryce***, 769 A.2d 469 (Pa. Super. 2001) (jury verdicts awarding zero damages are against weight of evidence where undisputed medical evidence reveals plaintiff suffered injuries in accident of type normally associated with pain and suffering).

Based on the uncontested evidence of Hernandez-Lerch's cervical and lumbosacral strain and sprain, as well as post-concussive syndrome, headaches, and unremitting low back pain, we conclude that Hernandez-Lerch suffered compensable pain that amounted to more than a mere transient rub of life. *Boggavarpu, supra*.

Judgment reversed and case remanded for a new trial limited to a determination of damages. Jurisdiction relinquished.

Judge Platt joins the Memorandum.

Judge Panella notes his dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/17/2016</u>